**PUBLISH**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-03383-REB

SANDRIA PACHECO,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed December 16, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of degenerative disc disease, chronic back pain, and depression. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

judge. This hearing was held on September 5, 2012. At the time of the hearing, plaintiff was 48 years old. She has a ninth grade education and past relevant work experience as a stock clerk and a health aide. She has not engaged in substantial gainful activity since July 8, 2010, the date of her application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other impairments were found to be non-severe. The ALJ found that plaintiff had the residual functional capacity to perform a wide range of light work which required simple, routine, repetitive tasks, only occasional public contact, and the ability to communicate only in basic, simple English. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that she could perform. The ALJ therefore found plaintiff not disabled at step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(c). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. ***See Kelley v. Chater***, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(a)(4)(i)-(v). ***See also Williams v. Bowen*** 844 F.2d 748, 750-52

(10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

## III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred in weighing the various medical source opinions of record and in finding that the alternative jobs identified at step 5 of the sequential evaluation were within plaintiff's residual functional capacity. Finding no such reversible error in the ALJ's decision, I affirm.

Plaintiff's first argument challenges the relative weights assigned to the opinions of plaintiff's treating psychiatrist, Dr. John Martens, and the non-examining state agency psychologist, Dr. Douglas Hanze. While Dr. Martens opined that plaintiff had marked limitations in numerous areas of work-related mental functioning (***see*** Tr. 304-305), Dr. Hanze found her to have only mild to moderate limitations (Tr. 70). The ALJ assigned "reduced" weight to Dr. Martens's opinion, while affording Dr. Hanze's opinion "significant" weight. (Tr. 29.)

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); ***see also Watkins v. Barnhart***, 350 F.3d 1297, 1300 (10th Cir. 2003). Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). ***See also Langley v. Barnhart***, 373 F.3d 1116, 1119 (10th Cir.

2004).[2] In all events, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey***, 816 F.2d at 513.

The ALJ found Dr. Martens's opinion "overly restrictive" in light of the treatment record, and therefore gave it "reduced weight." In this regard, he noted that the opinion, rendered after Dr. Martens had been treating plaintiff less than a year, was based on "minimal and only initial positive objective findings." He pointed also to the "extremely conservative" nature of plaintiff's treatment, which he characterized as having been principally "rendered over the phone." (Tr. 29.)[3]

Initially, I reject plaintiff's suggestion that the ALJ's use of the term "reduced weight" is overly vague as an indicator of the weight he assigned to Dr. Martens's opinion. In context, it is clear that the term was meant to convey the ALJ's assessment that Dr. Martens's opinion was not entitled to controlling weight. Nevertheless, the ALJ plainly afforded the opinion some weight, as he expressly incorporated a restriction on

---

[2] These factors include: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship; the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. ***See*** 20 C.F.R. § 416.927(c).

[3] The ALJ also cited as a reason plaintiff's inconsistent report of symptoms. (Tr. 29.) This reference seems to be to the report of the consultative psychological examiner, Dr. Brett Valette, who expressed significant concerns about the credibility of plaintiff's complaints and the validity of any conclusions to be drawn from his examination, based on plaintiff's "amazingly vague" and internally inconsistent answers to even basic questions. (***See*** Tr. 300-302.) Although the evidence does not suggest that plaintiff gave similarly inconsistent reports to Dr. Martens, any error in relying on this reason was plainly harmless in light of the other valid and sufficient reasons articulated for affording Dr. Martens's opinion reduced weight. ***See Parent v. Colvin***, – F.Supp.3d –, 2014 WL 4455017 at *4 n.6 (D. Colo. Sept. 10, 2014) (inclusion by ALJ of invalid reason for rejecting treating source opinion harmless where decision to afford opinion no weight was "more than adequately supported by the other specific, legitimate, and well-supported reasons he articulated for that decision").

public contact into plaintiff's residual functional capacity to account for Dr. Martens's indication that plaintiff had difficulties in appropriate social interaction. (***See*** Tr. 29-30.) The ALJ's opinion thus was "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." ***Langley v. Barnhart***, 373 F.3d 1116, 1120 (10th Cir. 2004).[4] Any imprecision in his language is plainly harmless in light of the opinion as a whole. ***See Williams v. Chater***, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal"); ***Bernal v. Bowen***, 851 F.2d 297, 302 (10th Cir. 1988) (where ALJ's opinion is otherwise amply supported by the record, error which does not prejudice claimant will not warrant remand).

As for the reasons cited by the ALJ in support of his decision to afford less than controlling weight to Dr. Martens's opinion, all are legitimate and find adequate support in the record. At the outset, the ALJ noted the limited duration of plaintiff's treatment with Dr. Martens prior to the issuance of his opinion. (Tr. 29.) Indeed, plaintiff had visited Dr. Martens only three times over a period of six months at the time he authored his opinion in February 2011. The limited nature of a treating source's involvement with a claimant's care is a valid reason for assigning lesser weight to his opinion. ***See*** 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and

---

[4] The ALJ's opinion here thus is distinguishable from that found to constitute reversible error in the cases on which plaintiff relies. ***See Krauser v. Astrue***, 638 F.3d 1324, 1330 (10th Cir. 2011) (remanding because "the ALJ simply concluded that '[the treating physician's] . . . cannot be given controlling weight' and then said no more about it"); ***Robinson v. Barnhart***, 366 F.3d 1078, 1083 (10th Cir. 2004) (reversing where ALJ "failed to provide any explanation of how he assessed the weight of the treating physician's opinion").

the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 20 C.F.R. § 416.902 (treating source is one with whom claimant has "ongoing treatment relationship"). ***See also Megginson v. Astrue***, 2011 WL 4382570 at *3 n.3 (D. Colo. Sept. 20, 2011), ***aff'd***, 489 Fed. Appx. 260 (10th Cir. July 17, 2012).

Moreover, the ALJ noted that Dr. Martens's treatment notes showed "minimal and only initial positive objective findings" that were inconsistent with the significant restrictions he suggested.[5] (Tr. 29.) That characterization is borne out by the record. Although Dr. Martens's treatment records note that plaintiff appeared depressed at several visits (Tr. 308, 311), there is nothing therein that even remotely supports the statements in his evaluation that plaintiff has "[s]evere personality issues" or that she "[r]eacts to stress with extreme rage & inappropriate social interaction" (Tr. 305).[6]

Nor do I perceive any reversible error in the ALJ's conclusion that plaintiff's treatment with Dr. Martens was conservative and rendered largely over the phone. (Tr. 29.) The ALJ elsewhere characterized plaintiff's treatment for her physical impairments as "very conservative, consisting entirely of medication" (Tr. 30), which adequately demonstrates how he understood and used the term "conservative" in referring to

---

[5] Although plaintiff purports not to understand what the ALJ meant by "only initial positive findings," earlier in his opinion, he stated plainly that the positive findings noted in the early stages of plaintiff's treatment were observed during the period of time when she was undergoing opiate detoxification. (Tr. 28.) Thereafter, it was noted that the only findings were that plaintiff continued to have a depressed mood.

[6] Moreover, Dr. Martens's statements that plaintiff "is clearly disabled by [learning disabilities], emotional trauma and physical limitations" (Tr. 310) and that her mental impairments, illiteracy, and learning disorders "preclude employment" (Tr. 305) are entitled to no special, much less determinative, weight, as they go to the ultimate issue of disability, which is a matter reserved exclusively to the Commissioner. ***See*** 20 C.F.R. § 416.927(d)(1); ***Estate of Stephens v. Colvin***, 2013 WL 1729366 at *3 n.6 (D. Colo. April 22, 2013).

plaintiff's psychological treatment. Moreover, the record fully supports the conclusion that plaintiff's mental health treatment in fact was largely limited to medication management. After an initial series of visits from August 2010 to April 2011,[7] plaintiff did not see Dr. Martens again until February 2012, at which time her medications were simply continued. (Tr. 336.)[8] In the meantime, plaintiff called Dr. Martens's office regularly to request medication refills. (***See*** Tr. 316-318, 330, 332, 334-335, 337, 353, 356, 359.) On the other hand, although plaintiff was scheduled to begin therapy in September 2010, she did not appear for her initial session with the psychologist, and the record does not reflect that she sought out or received any type of mental health counseling thereafter. (Tr. 313-315.)

I therefore find and conclude that the ALJ gave legitimate, sufficiently specific reasons for his decision to afford less than controlling weight to the opinion of Dr. Martens. Based on similar reasons – evidence of "conservative" (i.e., limited to medication) mental health treatment, evidence of non-compliance with recommendations for therapy and several unexplained failures to keep appointments, and minimal clinical findings in the record – the ALJ gave greater credence the opinion of Dr. Hanze. (Tr. 29.) "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **Social Security Ruling 96-6p**, 1996 WL

---

[7] In April 2011, Dr. Martens noted that plaintiff was "doing well for her" and "like[d her] meds as they are," reporting that "Neurontin is very helpful with pain." Dr. Martens found her to be "more healthy but still fragile." (Tr. 312.)

[8] The treatment record of that visit includes no indication that plaintiff complained of or was assessed for her alleged mental impairments. (***See*** Tr. 336.)

374180 at *2 (SSA July 2, 1996). Although the opinions of such sources generally carry less weight than those of treating and examining sources, ***see Robinson v. Barnhart***, 366 F.3d 1078, 1084 (10th Cir. 2004), "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," **Social Security Ruling 96-6p**, 1996 WL 374180 at *3. Such was the case here.

Plaintiff also complains of the weight afforded the physical capacity assessment of the consultative examiner, Dr. Tista Ghosh. (Tr. 293-297.) Following her examination, Dr. Ghosh suggested that, due to a positive straight leg test, plaintiff had a maximum capacity to sit, stand, and walk of up to two hours and was restricted to lifting no more than ten pounds. (Tr. 296.)[9] The ALJ found these limitations overly restrictive, stating that the straight leg raise test was both inconsistent with plaintiff's general physical complaints and isolated in the medical record. (Tr. 31.) I agree with plaintiff that the first of these reasons cannot withstand scrutiny, as it appears to constitute the substitution of the ALJ's own lay opinion for that of a medical professional as to the effect of medical findings. ***See Hamlin v. Barnhart***, 365 F.3d 1208, 1221 (10th Cir. 2004). ***See also McGoffin v. Barnhart***, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ may reject physician opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion") (citation and

[9] Dr. Ghosh also suggested further postural and environmental limitations (Tr. 296), some of which the ALJ adopted (Tr. 24, 31.) I therefore reject plaintiff's suggestion that the ALJ's statement that he gave this opinion "appropriate weight" evades meaningful review.

internal quotations marks omitted).

Nevertheless, the second observation – that the test is unique in the context of the larger medical record – does constitute good cause to reject a medical source opinion. ***See*** 20 C.F.R. § 416.927(c)(4); ***Pisciotta v. Astrue***, 500 F.3d 1074, 1078 (10th Cir. 2007). Moreover, the ALJ noted that Dr. Ghosh's conclusions were inconsistent with the conservative nature of plaintiff's treatment for physical symptoms and the lack of objective medical findings to support her vague complaints of pain. (Tr. 31.) Contrary to plaintiff's argument, the ALJ thoroughly recounted the rather scant evidence of plaintiff's physical impairments. In this regard, he noted that plaintiff's primary complaint had been general pain, but that there was "little other indication of physical symptoms" and indeed, there are no records of any treatment for physical impairments (other than the prescription of medication)[10] until plaintiff suffered a bout of shingles in late 2011. (Tr. 30, 336.) The record supports these conclusions. The ALJ's reliance on a single improper reason therefore undoubtedly was harmless and does not warrant remand. ***See Parent v. Colvin***, – F.Supp.3d –, 2014 WL 4455017 at *4 n.6 (D. Colo. Sept. 10, 2014).

Although plaintiff positions her second point of error as going to whether the Commissioner met her burden at step 5[11] of the sequential evaluation to show a

---

[10] Moreover, plaintiff's pain medications were reported to be efficacious. (***See*** Tr. 312 (reporting that Neurontin was "very helpful for pain").) Moreover, when plaintiff's request for a refill of this prescription in April 2012, was denied, it was noted that plaintiff had not seen Dr. Martens since the previous February and had no follow-up appointments scheduled. (Tr. 337.)

[11] The court has found no clear standard for how the steps of the sequential evaluation process properly are enumerated, whether by numerals (e.g., "step 5"), or alternative, by words (e.g., "step five"). The Commissioner's regulations use words, ***see, e.g.***, 20 C.F.R. § 416.920, as it appears do the ALJs in their standard recitation of the evaluation process (***see, e.g.***, Tr. 20-22). On the other hand, the

sufficient number of alternative jobs that were within plaintiff's residual functional capacity, her argument is actually a challenge the ALJ's failure to include within the residual functional capacity assessment at step 4 a finding that plaintiff was illiterate, which allegedly then infected the step 5 determination. The ALJ noted that although there were indications in the record that plaintiff was illiterate, she stated on her initial disability report that she could read, write, and understand English. (***See*** Tr. 204.) He also discussed her claims of illiteracy in the context of finding her testimony not fully credible. (Tr. 25-26.) The ALJ therefore found instead that plaintiff had a limited education and the ability to communicate in English. (Tr. 32.) ***See*** 20 C.F.R. § 416.963(b)(3) ("Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a seventh grade through the eleventh grade level of formal education is a limited education.").

Under the Commissioner's regulations, illiteracy is considered in the context of the vocational factor of education. The regulations define illiteracy as "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple

---

Commissioner has used numerals in certain of her Social Security Rulings. ***See, e.g.*** **Social Security Ruling 96-8p**, 1996 WL 374184 (SSA July 2, 1996). The Supreme Court likewise has used both designations at different times. ***Cf. Barnhart v. Thomas***, 540 US 20, 24, 124 S.Ct. 376, 379, 157 L.Ed.2d 333 (2013) (words) ***with Sullivan v. Zebley***, 493 U.S. 521, 535 n.15, 110 S.Ct. 885, 894, 107 L.Ed.2d 967 (1989) (numerals). Although the Tenth Circuit appears to have adopted the practice of designating the steps by words in more recent years, it also has used numerals – indeed, within the same opinion as it also used words. ***See Carver v. Colvin***, – Fed. Appx. –, 2015 WL 307084 at *1 & *4 (10th Cir. Jan. 20, 2015).

Given the lack of a firm consensus on this issue, the court will continue its own practice of using numerals in referring to the steps of the sequential evaluation to achieve a modicum of internal consistency with its numeric description of the quinquepartite, sequential evaluation at 3, *supra*..

message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 416.964(b)(1). Whether a person meets this definition is not necessarily dictated by her level of formal education. ***Id***. § 416.964(b); ***see also*** Social Security Administration, Office of Hearings and Appeals, Litigation Law Manual ("HALLEX") I-5-3-12, § III(A), ***Evaluation of Illiteracy***, 1993 WL 13011397 (SSA Oct. 1, 1993) (recognizing that "some illiterate people have reached the high school level").[12] Contradictory evidence may be found in medical reports, work history reports, observations of field office personnel, or elsewhere. HALLEX I-5-3-12, § III(A). In addition, if the ALJ has reason to believe that a claimant may be illiterate but the evidence of record is not clear, "the ALJ may wish to ask the individual at the administrative hearing to read and write a simple message, in addition to eliciting testimony on the issue. . . . It is also appropriate to obtain any available school records or any other evidence which would bear on the issue." ***Id***., § III(B).

It does strike this court that the ALJ could have done more to develop the record regarding whether plaintiff in fact was illiterate, *vel non*, or at least better articulate the bases for his conclusion that she was not. Nevertheless, if there was error in this regard and plaintiff is in fact illiterate, she has not shown that such a conclusion warrants remand in this case.

Plaintiff argues that illiteracy is incompatible with the jobs identified at step 5 because the Language Development level of the General Educational Development

---

[12] HALLEX is an internal agency directive that "defines procedures for carrying out policy and provides guidance for processing claims at the Hearing, Appeals Council, and Civil Actions levels." HALLEX I-1-01. It does not have the force and effect of law. ***See Moore v. Apfel***, 216 F.3d 864, 868-89 (9th Cir. 2000).

("GED") component of these jobs as set forth in the *Dictionary of Occupational Titles* contemplates the ability to read and write to a far greater degree.[13] GED is comprised of three variables – Reasoning Development, Mathematical Development, and Language Development. ***See id***. The Language Development Level of the two alternative jobs identified by the ALJ as being within plaintiff's residual functional capacity – office helper and hand packager – are 2 and 1, respectively. Language Development level 2 contemplates the following:

> Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. . . . . Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

***Dictionary of Occupational Titles***, App. C § III: Components of the Definition Trailer (http://www.occupationalinfo.org/appendxc_1.html#III) (last accessed March 17, 2015). Language Development level 1 is described as follows:

> Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. . . . Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

***Id.*** Plaintiff argues that someone who is illiterate has none of these skills, and thus that the Commissioner has failed to meet her burden at step 5.

---

[13] "General Educational Development – or GED – embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." ***Dictionary of Occupational Titles***, App. C § III: Components of the Definition Trailer http://www.occupationalinfo.org/appendxc_1.html#III (last accessed March 17, 2015).

I am not persuaded. For one thing, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job[.]" ***Anderson v. Colvin***, 514 Fed. Appx. 756, 764 (10th Cir. April 4, 2013). Moreover, accepting plaintiff's argument would make illiteracy itself a substitute for disability, which is contrary to both common sense and the Commissioner's regulations:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . . The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18–49) even if illiterate or unable to communicate in English.

20 CFR Pt. 404, Subpt. P, App. 2, § 202.00(g). ***See also Charles v. Astrue***, 291 Fed. Appx. 552, 555 (5th Cir. July 30, 2008) ("[P]ersons who are functionally illiterate in English can still perform a significant number of unskilled jobs in the national economy[.]") Finally, it appears that the jobs plaintiff performed in the past had GED Language Development levels of as high as 2, demonstrating that such requirements in themselves do not preclude plaintiff from working, even if she is illiterate. (***See*** Tr. 56-57.)[14] Given all these circumstances, I find no reversible error in the ALJ's conclusion

---

[14] According to the testimony of the vocational expert, plaintiff had worked in the past as a stock clerk (***DOT*** 299.367-014, GED Language Development level 2), a home health aide (***DOT*** 354.377-014, GED Language Development level 2), a nurse assistant (***DOT*** 355.674-014, GED Language Development level 2), and a kitchen helper (***DOT*** 318.687-010, GED Language Development level 1). Although plaintiff claims she was fired from her job as a home health aide after her superiors discovered she was illiterate, the ALJ found this testimony not credible, and I find no basis to fault his determination in that regard. (***See*** Tr. 25-26.) ***See also White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) ("[C]redibility determinations

that plaintiff could perform these jobs.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 18, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence.").